In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1353

ALFONSO TORRES-CHAVEZ,

*Petitioner-Appellant*,

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14 C 9405 — **Amy J. St. Eve**, *Judge*.

ARGUED APRIL 27, 2016 — DECIDED JULY 7, 2016

Before FLAUM, MANION, and WILLIAMS, *Circuit Judges*.

PER CURIAM. Alfonso Torres-Chavez was sentenced to 14 years' imprisonment after a jury found him guilty of conspiring to distribute cocaine, 21 U.S.C. §§ 846, 841(a)(1), possessing with intent to distribute cocaine, *id.* § 841(a)(1), and using a cellular phone to facilitate the distribution conspiracy, *id.* § 843(b). After his conviction was affirmed on appeal, Torres-Chavez sought collateral relief under 28 U.S.C.

§ 2255. Torres-Chavez claims that six months before trial, the government offered a plea agreement that provided for 10 years' imprisonment—the statutory minimum for conspiring to distribute more than 5 kilograms of cocaine. 21 U.S.C. § 841(b)(1)(A)(ii)(II). He alleges that his counsel was constitutionally ineffective for advising him that the government lacked enough evidence to convict him at trial and that he should therefore reject the plea agreement. The district court denied Torres-Chavez's motion without holding an evidentiary hearing, finding that this advice was not objectively unreasonable. But that ruling was premature: the record contains no evidence about what Torres-Chavez's counsel knew about the government's case against his client at the time of the offer, and the government's case at trial was quite strong. So we vacate the district court's dismissal of Torres-Chavez's § 2255 motion and remand for an evidentiary hearing.

## I.   Background

Torres-Chavez was a member of the drug-trafficking cartel "La Familia," which is based in Michoacán, Mexico. The U.S. Drug Enforcement Administration (DEA) recorded phone conversations between José Gonzalez-Zavala (one of Torres-Chavez's co-conspirators) and "Guero" (later identified as Torres-Chavez) in which the two discussed the cartel's cocaine transactions. In those conversations, Gonzalez-Zavala instructed Torres-Chavez and another co-conspirator, Bartolo Lucatero, to distribute cocaine in Chicago.

Lucatero was indicted first, in November 2009. Almost a year later, Torres-Chavez was indicted after Lucatero agreed to cooperate with the government and identified Torres-Chavez as Guero. (Before Lucatero's cooperation, and de-

spite a lengthy investigation, Torres-Chavez had not been identified.) Torres-Chavez says that approximately six months before trial, the government approached him with a plea offer, which he rejected upon the advice of his counsel.

A few weeks before trial, the defense strategy solidified and a clearer picture of the government's evidence emerged. At a pre-trial status hearing, Torres-Chavez's counsel said "the defense is predicated on the fact that they have the wrong party." The government proffered the testimony of Jorge Ayala-German, a co-conspirator and the caretaker of one of the cartel's stash houses; the testimony of Lucatero, who would identify Torres-Chavez as Guero and testify about a 2007 drug deal with Torres-Chavez; and a summary of eight intercepted phone calls. A few days before trial, the government informed defense counsel that Ayala-German would also identify Torres-Chavez's voice.

At trial, the government introduced substantial evidence involving Torres-Chavez's participation in the conspiracy: (1) the recorded phone calls, translated from Spanish; (2) Lucatero's testimony that Torres-Chavez was Guero, about Torres-Chavez's involvement in the charged conspiracy and drug transactions, and about his previous drug dealing with Torres-Chavez; (3) a contract linguist's testimony that Torres-Chavez's voice matched Guero's voice on the recordings; (4) Ayala-German's testimony that he recognized Torres-Chavez's voice on the phone recordings; and (5) airline records showing that a ticket was issued to "Alfonso Chavez" for a flight departing O'Hare International Airport a few hours after Guero was recorded saying he needed to catch a flight.

Torres-Chavez's counsel tried to discredit the identification of Torres-Chavez as Guero. Counsel elicited testimony from a DEA agent that the DEA was unaware of Guero's identity until Lucatero identified Torres-Chavez. Counsel later argued that Lucatero was a "self-admitted liar" who conveniently inculpated Torres-Chavez whenever he got in trouble with the police. Counsel also elicited testimony from the linguist that her analysis was based solely on listening to audio samples from the intercepted calls and the recordings made of Torres-Chavez's voice in jail, and that she did not use voice-recognition software or analyze sound waves or biometric captures. In addition, counsel attacked Ayala-German's credibility by pointing to his plea agreement, his memory problems from drug use, and his illegal entry into the United States. Counsel also emphasized that Ayala-German had lied when he first met with government officials, and that his voice identification of Torres-Chavez was based on only two conversations. The jury returned a guilty verdict on all counts and the district court sentenced Torres-Chavez to 168 months' imprisonment.

In his initial appeal, Torres-Chavez challenged the sufficiency of the evidence identifying him as Guero. *See generally United States v. Torres-Chavez*, 744 F.3d 988 (7th Cir. 2014). But we affirmed his conviction, concluding that the testimonies of Lucatero, Ayala-German, and the linguist were sufficiently persuasive. *Id.*

Torres-Chavez then moved for collateral relief under 28 U.S.C. § 2255, claiming ineffective assistance of counsel. He argued that his trial counsel advised him to reject the plea offer because the "government lacked the evidence to convict," and because "there was no way that he could get ten

years." Torres-Chavez further complained that his lawyer did not show him the plea agreement.

In response, the government argued that Torres-Chavez merely alleged that his attorney "wrongly predicted victory at trial"—an insufficient ground for an ineffective-assistance claim. The government also argued that Torres-Chavez had not pointed to any facts demonstrating that his counsel's forecast was unreasonable. Instead, the record suggested that Torres-Chavez's conviction was not a forgone conclusion before trial: the government's evidence centered on Lucatero's identification of Torres-Chavez, which Lucatero agreed to provide in exchange for a favorable plea deal. The government argued in the alternative that if counsel's performance unreasonable, an evidentiary hearing should be held to explore whether Torres-Chavez had suffered prejudice.

The district court agreed with the government and, without holding an evidentiary hearing, denied Torres-Chavez's motion. Accepting his allegations as true, the court found that Torres-Chavez had not overcome the presumption that his counsel's advice to proceed to trial was a sound strategic decision based on his assessment of the government's evidence. The court also found that conviction was not assured because of the importance of Lucatero's credibility. In addition, the court found that an evidentiary hearing was unnecessary, since the trial record conclusively showed that Torres-Chavez was not entitled to any relief. The district court did not certify any issues for appeal.

We granted Torres-Chavez's request for a certificate of appealability, concluding that he made a substantial showing "as to whether counsel rendered ineffective assistance by

allegedly advising [him] to reject the government's plea offer and proceed to trial because of a lack of evidence to support a conviction."

## II. Analysis

We review a district court's denial of a § 2255 petition on factual matters for clear error and on questions of law de novo. *Mason v. United States*, 211 F.3d 1065, 1068 (7th Cir. 2000). To succeed on his ineffective assistance of counsel claim, Torres-Chavez must show that his counsel's advice to reject the plea agreement and go to trial was objectively unreasonable, and that absent this advice he would have accepted the plea offer. *See Missouri v. Frye*, 132 S. Ct. 1399, 1408–09 (2012); *Lafler v. Cooper*, 132 S. Ct. 1376, 1384–85 (2012); *Martin v. United States*, 789 F.3d 703, 706 (7th Cir. 2015). While there is a wide range of conduct that constitutes reasonable performance, an attorney's performance is deficient if the attorney grossly mischaracterizes the evidence or advises a client to reject a plea offer and go to trial in the face of overwhelming evidence and no viable defenses. *See, e.g.*, *Julian v. Bartley*, 495 F.3d 487, 495 (7th Cir. 2007); *Gallo-Vasquez v. United States*, 402 F.3d 793, 798 (7th Cir. 2005); *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991).

We review a district court's decision to deny an evidentiary hearing in a § 2255 action for abuse of discretion. *Boulb v. United States*, 818 F.3d 334, 339 (7th Cir. 2016). If "the files and records of the case conclusively show that the prisoner is entitled to no relief," or if the allegations are too vague and conclusory, then an evidentiary hearing is unnecessary. 28 U.S.C. § 2255(b); *see Ryan v. United States*, 657 F.3d 604, 606–07 (7th Cir. 2011). But if a petitioner "alleges facts that, if true, would entitle him to relief," then an evidentiary hear-

ing is necessary. *Lafuente v. United States*, 617 F.3d 944, 946 (7th Cir. 2010); *see Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009). The petitioner's burden for receiving an evidentiary hearing is relatively light, *see Smith v. United States*, 348 F.3d 545, 550–51 (6th Cir. 2003), and one is generally required when "the record contains insufficient facts to explain counsel's actions as tactical," *Osagiede v. United States*, 543 F.3d 399, 408 (7th Cir. 2008).

If we assume (as Torres-Chavez and the government do) that Torres-Chavez's counsel knew about all the evidence that was presented at trial when the plea offer was made, then his counsel's performance was deficient. But our analysis does not stop here, since the relevant inquiry is what Torres-Chavez's counsel knew when the plea offer was rejected, *not* what he knew at the conclusion of trial. *See Premo v. Moore*, 562 U.S. 115, 125–27 (2011) (emphasizing the importance of analyzing the facts known at the time of the plea offer because, in the case of an early offer, the lawyer may not yet know the course of a case); *Strickland v. Washington*, 466 U.S. 668, 689 (1984) (instructing courts to "eliminate the distorting effects of hindsight" by "evaluat[ing] the conduct from counsel's perspective at the time" of counsel's challenged conduct); *accord Owens v. Guida*, 549 F.3d 399, 406 (6th Cir. 2008); *Bryan v. Mullin*, 335 F.3d 1207, 1220 (10th Cir. 2003) (en banc). Here, the record does not show whether at the time of the plea offer, Torres-Chavez's counsel knew about Lucatero's testimony, the linguist's testimony, the phone-call recordings, or the flight records. So a hearing is needed to determine these facts, and then to determine whether the counsel's advice was objectively reasonable. *See United States ex rel. Hampton v. Leibach*, 347 F.3d 219, 235–36 (7th Cir. 2003) (concluding that evidentiary hearing was

necessary to resolve ineffective-assistance claim, since state court's determination that defense counsel acted strategically was "entirely speculative"); *Bruce v. United States*, 256 F.3d 592, 598–99 (7th Cir. 2001) (concluding that evidentiary hearing was necessary to determine whether counsel had adequately investigated potential alibi witnesses' testimony, in light of "conflicting affidavits and defense counsel's conclusory assertions").

The government's reliance on *Almonacid v. United States*, 476 F.3d 518 (7th Cir. 2007), is misplaced. In *Almonacid*, we affirmed the denial of a § 2255 motion in which the petitioner alleged that his counsel's advice to reject a plea deal was deficient. In doing so, we held that an evidentiary hearing was unnecessary because the evidence against Almonacid was not strong: there was no forensic or photographic evidence, no wiretaps, and no witness who had observed Almonacid's alleged criminal activity. *Id.* at 522. True, we reached this conclusion after examining evidence admitted at trial, rather than requiring an evidentiary hearing to determine what the lawyer knew at the time of the plea offer. *See* 476 F.3d at 522 n.2. But the lawyer's assistance was reasonable regardless of whether we assumed that he knew about all or none of the evidence. Not so here. If the district court finds that Torres-Chavez's counsel knew about all the evidence, then his performance was unreasonable. But if an evidentiary hearing reveals that he did not know about certain of the government's evidence, then his assistance may have been constitutionally adequate.

An evidentiary hearing would also provide context for why Torres-Chavez's counsel allegedly advised him that he could not be sentenced to 10 years' imprisonment, since

that's the statutory minimum for conspiring to distribute more than 5 kilograms of cocaine. *See* 21 U.S.C. § 841(b)(1)(A)(ii)(II). As Torres-Chavez's allegations stand, his counsel's advice about his sentencing exposure is wrong. And this is information his counsel should have known by the time the plea offer was made. *See Julian*, 495 F.3d at 495–96 (finding that attorney's performance was objectively unreasonable when advice about sentence was "clearly wrong"); *Moore v. Bryant*, 348 F.3d 238, 241–42 (7th Cir. 2003) (same). Although the government argues that Torres-Chavez waived this claim, his § 2255 motion included this as part of his argument—that the advice to reject the plea offer was objectively unreasonable in light of the fact that there was overwhelming evidence against him *and* that the government was offering favorable terms (the statutory minimum).

Finally, Torres-Chavez argues that the government waived any argument that he was prejudiced by his counsel's deficient performance. The government counters that it did not waive the argument, but rather reserved it in case the argument about the performance prong failed. The government then argues, for the first time on appeal, that Torres-Chavez's "allegations of prejudice are legally insufficient on their face." The question of prejudice should also be resolved at an evidentiary hearing, as the government argued before the district court. *See Hutchings v. United States*, 618 F.3d 693, 696 (7th Cir. 2010); *Nichols v. United States*, 75 F.3d 1137, 1145 n.17 (7th Cir. 1996).

### III. Conclusion

We VACATE the district court's dismissal of Torres-Chavez's § 2255 motion, and REMAND for the district court to hold an evidentiary hearing consistent with this opinion.